IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DENNIS RUSSELL HOOPER,

Plaintiff,

v.

JACKSON COUNTY SHERIFF'S OFFICE, et al,

Defendants.

Case No. 1:13-cv-01400

**ORDER**

CLARKE, Magistrate Judge.

Plaintiff Dennis Hooper, proceeding pro se and in forma pauperis, asserts claims against the defendants for violations of his civil rights. This matter comes before the Court on a motion for summary judgment (#42) filed by the defendants, Jackson County Sheriff's Office, and Sheriff Mike Winters, and Deputy David Penkava. Plaintiff has additionally filed a motion to compel (#47) and a motion strike (#55). For the reasons below, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's motion to strike (#55) is DENIED. The Court defers ruling on Plaintiff's motion to compel (#47).

Page 1 – ORDER

## BACKGROUND

On August 16, 2011, Plaintiff Dennis Hooper was operating his vehicle on a highway near Rogue River, Oregon, when Jackson County Sheriff's Deputy Penkava initiated a traffic stop. Plaintiff claims that Deputy Penkava refused to tell Plaintiff the reason for the stop, instead asking Plaintiff for his license, registration, and proof of insurance. Plaintiff claims he provided valid proof of all three. Deputy Penkava nevertheless issued Plaintiff three citations for failure to have the requested documents, and he then impounded Plaintiff's vehicle. Plaintiff claims that he was acquitted of all three citations, and he attempted to be reimbursed by JCSO for the towing and impound costs and fees, but his requests were denied.

Deputy Penkava claims that he had reasonable suspicion to initiate the August 16 traffic stop with Plaintiff. He claims that his prior encounters with Plaintiff, including a traffic citation issued on January 29, 2009 for operating a motor vehicle without a valid Oregon driver's license, gave him cause to believe that Plaintiff continued to drive without a proper driver's license. Plaintiff disputes that Deputy Penkava was involved with any previous traffic citations or encounters, except a domestic violence incident in early 2009.

After initiating the stop on August 16, 2011, Deputy Penkava became aware that there was a warrant for Plaintiff's arrest in Linn County, Oregon, relating to a charge for driving with a suspended license. Deputy Penkava then issued him the three citations, placed him under arrest pursuant to the warrant, and impounded his vehicle.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The

Page 2 – ORDER

moving party has the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Id. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

### I. Defendant Deputy Penkava is not entitled to summary judgment

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing United States v. Cortez, 449 U.S. 411, 417 (1981); Terry v. Ohio, 392 U.S. 1, 9 (1968)). Such investigatory stops are justified by "reasonable suspicion" that criminal activity may be afoot. Arvizu, 534 U.S. at 273; see also United States v. Sokolow, 490 U.S. 1, 7, 1 (1989); Cortez, 449 U.S. at 417. "[T]he Fourth Amendment's proper function is to constrain, not against all

Page 3 – ORDER

intrusions . . . but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Schmerber v. California, 384 U.S. 757, 768 (1966). The "touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citations omitted).

The Supreme Court has held that if officers have probable cause to believe that a traffic violation occurred, officers may conduct a traffic stop even if the stop serves some other purpose. United States v. Willis, 431 F.3d 709, 715 (9th Cir. 2005) (citing Whren v. United States, 517 U.S. 806, 810 (1996). Thus, "[s]ubjective intentions [of law enforcement officers] play no role in ordinary, probable-cause Fourth Amendment analysis." Whren, 517 U.S. at 813.

In this case, the question is whether or not it was reasonable for an officer to rely on information that Plaintiff's license was suspended two and a half years prior to the incident in question. Deputy Penkava has submitted a declaration stating that he "recognized Hooper and his residence from multiple previous encounters." Penkava states that, prior to the August 16, 2011 encounter, he "had stopped and issued citations to Hooper on various occasions." The only specific occasion he references, however, is the incident in which he "cited Hooper for operating a motor vehicle without a valid Oregon driver's license on January 29. 2009." While reasonable suspicion is a relatively low bar, the Court cannot say that, without more, one previous incident of driving with a suspended license creates reasonable suspicion to effectuate a traffic stop more than two and a half years later.

In addition, Plaintiff disputes the assertion that he had any previous contact with Deputy Penkava, other than an unrelated incident involving domestic violence. This factual dispute is

Page 4 – ORDER

material to the issue of whether or not Penkava had reasonable suspicion to stop Plaintiff. For this additional reason, the defendants' motion for summary judgment on this claim is denied.

## II. Defendants Sheriff Winters and the Jackson County Sheriff's Office are entitled to summary judgment

Section 1983 liability of a local governing body arises only when "action pursuant to official . . . policy of some nature caused a constitutional tort" and not on the basis of respondeat superior. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691-99 (1978). The "official policy" requirement was intended to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). The circumstances in which Monell liability may be found under § 1983 are "carefully circumscribed." Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir.1995).

A § 1983 plaintiff may establish Monell liability in one of three ways:

> (1) prove that a county employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the "standard operating procedure" of the county; (2) establish that the individual who committed the constitutional tort was an official with final policy-making authority; or (3) prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

See Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted). Whether a particular official has final policy-making authority is a question of state law. Id.

In addition to claims based on an official policy, a plaintiff may assert Monell claims based on a custom or a failure to train. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cnty. Commis. v. Brown, 520 U.S. 397, 404 (1997). Similarly, "a local government's

Page 5 – ORDER

decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011). But, as the Supreme Court has cautioned, "[a] municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purpose of failure to train." Id. at 1360 (quoting Bd. of Cnty. Commis., 520 U.S. at 409).

Plaintiff has not submitted any evidence to support his claims against the JCSO defendants, or to create an issue of material fact regarding their conduct. He has not submitted evidence of a formal policy or procedure that would give rise to the alleged constitutional violation in this case, nor that any informal policy was the moving force behind the alleged violation. Deputy Penkava is not a final policy-making authority, and there is no evidence that any final policy-making authority ratified unconstitutional conduct. See Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (holding that a policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification); Weisbuch v. County of Los Angeles, 119 F.3d 778, 781 (9th Cir.1997) (holding that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval). Finally, there is no evidence of a pattern of similar constitutional violations by untrained employees that would demonstrate deliberate indifference for purposes of a claim for failure to train.

Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff has failed to carry his burden in responding to a motion for summary judgment by putting forth specific facts to show there is a genuine issue for trial.

### III. Plaintiff's motions to strike and to compel discovery

Plaintiff's motion to strike Deputy Penkava's declaration is based on Plaintiff's assertion that he never had any contact with Deputy Penkava involving a traffic stop or violation. The declaration (Dkt. No. 42-2) is properly authenticated and purports to state facts as asserted and based on the personal knowledge of Deputy Penkava. Plaintiff's dispute of fact is not a proper basis to strike Deputy Penkava's declaration. The Court cannot weigh the facts on a motion for summary judgment; rather, such a dispute must be decided by a factfinder after hearing all the evidence at trial.

At the oral argument hearing on July 15, 2014, it appeared as though several of the issues in Plaintiff's motion to compel had been resolved. Therefore the Court will defer ruling on this motion. The Court will issue a separate order to schedule a telephonic status conference to discuss any remaining discovery issues, and to potentially delay the currently scheduled trial date to allow such issues to be resolved.

### ORDER

The defendants' motion (#42) is GRANTED in part and DENIED in part. The case will move forward on Plaintiff's Fourth Amendment claim against Deputy Penkava. All other claims and defendants are dismissed.

Plaintiff's motion to strike (#55) is DENIED. The Court defers ruling on Plaintiff's motion to compel (#47).

It is so ORDERED and DATED this _____ day of July, 2014.

_____
MARK D. CLARKE
United States Magistrate Judge